IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| SALLY L. OWENS,<br><br>    Plaintiff<br><br>    VS.<br><br>MICHAEL J. ASTRUE, Commissioner,<br>Social Security Administration,<br><br>    Defendant | NO.  5:08-CV-237 (CWH)<br><br>SOCIAL SECURITY APPEAL |

**O R D E R**

    Plaintiff SALLY L. OWENS filed an application for a period of disability/disability insurance benefits and Supplemental Security Income benefits on March 22, 2002.  Her claim was denied initially and upon reconsideration.  Plaintiff then requested a hearing which was held on September 21, 2004.  Thereafter, the Administrative Law Judge ("ALJ") issued a hearing decision on November 18, 2004, finding that plaintiff was not disabled (Tr. 13-25). Plaintiff Owens sought review of the ALJ's decision by the Appeals Council, but the Appeals Council denied this request for review in an action dated April 25, 2005, thereby making the ALJ's decision the final decision of the Commissioner (Tr. 4-6).  Thereafter, Plaintiff filed her appeal to this Court, Case No. 5:05-CV-203, and, on March 17, 2006, this Court remanded the matter to the Defendant under the mental retardation standard. (Tr. 397-402). The matter came on for hearing upon remand to the ALJ on August 14, 2007, at which time Plaintiff presented further evidence concerning her physical and mental disabilities (Tr. 666-700).  However, on September 25, 2007, the Administrative Law Judge denied Plaintiff's claim for the second time  (Tr. 364-383). Plaintiff then filed formal written exceptions to the hearing decision on October 24, 2007, which was denied by the Appeals Council on June 10, 2008 (Tr. 349-351). Accordingly, the final reasoned decision of the Commissioner is that of the ALJ on September 25, 2007.

Plaintiff Owens timely pursued and exhausted her administrative remedies available before the defendant. The case is now ripe for review in this court under §§ 405(g) and 1383(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3). Both parties have consented to the United States Magistrate Judge conducting any and all proceedings herein, including but not limited to the ordering of the entry of judgment. The parties may appeal from this judgment, as permitted by law, directly to the Eleventh Circuit Court of Appeals. 28 U.S.C. § 636(c)(3).

In reviewing the final decision of the Commissioner, this court must evaluate both whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner applied the correct legal standards to the evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's factual findings are deemed conclusive if supported by substantial evidence, defined as more than a scintilla, such that a reasonable person would accept the evidence as adequate to support the conclusion at issue. *Cornelius v. Sullivan,* 936 F.2d 1143, 1145 (11th Cir. 1991); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In reviewing the ALJ's decision for support by substantial evidence, this court may not re-weigh the evidence or substitute its judgment for that of the Commissioner. "Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239. "In contrast, the [Commissioners'] conclusions of law are not presumed valid....The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius*, 936 F.2d at 1145-1146.

20 C.F.R. § 404.1520 (1985) provides for a sequential evaluation process to determine whether a claimant is entitled to Social Security disability benefits. The Secretary employs the following step-by-step analysis in evaluating a claimant's disability claims: (1) whether the claimant is engaged in gainful employment; (2) whether claimant suffers from a severe impairment which has lasted or can be expected to last for a continuous period of at least twelve months; (3) whether claimant suffers from any of the impairments set forth in the listings of impairments provided in Appendix 1; (4) whether the impairments prevent claimant from returning to his previous work; and (5) whether claimant is disabled in light of age, education, and residual functional capacity. *Ambers v. Heckler*, 736 F.2d 1467, 1470-71 (11th Cir.1984). Should a person be determined disabled or not disabled at any stage of the above analysis, further inquiry pursuant to the analysis ceases. Accordingly, if a claimant's condition meets an impairment set forth in the listings, the claimant is adjudged disabled without considering age, education, and work experience. 20 C.F.R. § 404.1520(d).

In the case at bar, the ALJ concluded that plaintiff Owens had "severe" impairments of Graves's disease, obesity, osteoarthritis of the knees, carpel tunnel syndrome, depression, and borderline intellectual functioning. The ALJ found that she retained the residual functional capacity to perform unskilled work at the light exertional level, carrying up to 20 pounds on occasion and 10 pounds frequently, with a sit/stand option, that did not require her to climb ladders, ropes, or scaffolds, with only occasional climbing stairs, occasional balancing, stooping, kneeling, crouching, and crawling; frequent handling and fingering; with no exposure to hazardous conditions, with only occasional contact with the general public, and in a stable work setting with similar job duties rather than changing job duties, and was therefore not disabled.

Diana Whiteman, M.D., performed a consultative medical examination of Plaintiff Owens on September 11, 2002 (Tr. 172, 372). Plaintiff was 68 inches tall and weighed 298 pounds (Tr. 173, 372). Her blood pressure was 160/92, and she voiced no complaints at the examination (Tr. 173, 372). The overall examination was unremarkable and within normal limits with full range of motion and normal reflexes (Tr. 173, 372). An EKG was abnormal and anterio-septal myocardial damage was not ruled out (Tr. 173, 372). On extremities exam, Dr. Whiteman found that Plaintiff had full range of motion of the limbs and good digital dexterity (Tr. 173). Although there was positive Phalens, Plaintiff had no pain in her wrist (Tr. 173). Dr. Whiteman reported her diagnostic impression that Plaintiff had a reported history of hypertension; a reported history of Graves's disease; a history of elevated cholesterol; and, EMG history of bilateral carpal tunnel syndrome (Tr. 174, 372).

Orthopedic records from Dr. Robert Blackwell, M.S showed that he evaluated Plaintiff on August 14, 2002, for complaints of bilateral wrist and hand pain with positive EMG studies for mild to moderate bilateral carpal syndrome(Tr. 180, 372). Rheumatology and laboratory studies were negative for CBC and rheumatoid factor with mildly elevated SED rate, but low positive titer for ANA (Tr. 180, 372). Plaintiff was treated with conservative nighttime splinting and anti-inflammatory medications, and on September 23, 2002, Dr. Blackwell reported that she had responded well and was better but still reporting finger numbness (Tr. 180, 372). Dr. Blackwell referred Plaintiff to Dr. M. Gupta for rheumatologic consultation and continued to follow her for carpal tunnel syndrome (Tr. 180, 372).

Dr. M. Gupta performed his examination of Plaintiff on November 6, 2002 (Tr. 288, 372). At that time, Plaintiff weighed 304 pounds with blood pressure at 155/100 (Tr. 288, 372). Plaintiff's physical examination was unremarkable with normal range of motion (Tr. 288-89, 372). Dr. Gupta reported that repeat laboratory studies and ANA were essentially normal or negative with negative urinalysis (Tr. 289, 372). Plaintiff presented with symptoms of bilateral hand pain previously found consistent with mild carpal tunnel syndrome that had responded to conservative management (Tr. 289, 372). Dr. Gupta noted the previously positive ANA study, but found that Plaintiff lacked overt evidence of systemic inflammatory rheumatic disorder on his examination (Tr. 289, 372). Dr. Gupta was also of the opinion that Plaintiff had mild osteoarthritis of the knee joints for which he recommended therapeutic exercises to strengthen her quadriceps along with weight reduction (Tr. 289, 372). Dr. Gupta desensitized two trigger points with Marcaine injections in the upper dorsal and neck region and advised Plaintiff to continue her regular treatment for bilateral carpal tunnel syndrome (Tr. 289, 372). He saw Plaintiff again on August 27, 2003, for complaints of foot pain without swelling, but x-rays of both feet were normal and Dr. Gupta diagnosed myofacial pain syndrome (Tr. 285, 286, 372). Regarding Plaintiff's hand and wrist complaints, x-rays of the right wrist and hand on September 29, 2003 were normal (Tr. 284, 372). Mild knee crepitance was noted on December 29, 2003 (Tr. 282, 372). Plaintiff Owens returned to Dr. Gupta on November 8, 2005, and reported that she had lost 20 pounds since the last visit; she continued to complain of knee pain, resulting in an assessment of osteoarthritis the knees (Tr. 372, 542).

According to Jerry Dalton, a consultative psychological examiner, Plaintiff has a full scale IQ of 64 (Tr. 170). Dr. Dalton diagnosed Major Depressive Disorder — Mild to Moderate by History, rule out Anxiety NOS, mild mental retardation (Tr. 166-171). On April 5, 2007, a second consultative psychological examiner, Dr. Muller, determined that Plaintiff has a full scale IQ of 65 and generally agreed with the assessment of Dr. Dalton. (Tr. 636-644).

5

On March 26, 2007, a consultative physical examination was performed by Dr. Hutchings who catalogued a history of osteoarthritis and carpal tunnel syndrome which he opined limited Plaintiff to lifting ten pounds occasionally and less than ten frequently and standing/walking only two hours in an eight-hour day (Tr. 631-635).

*Listing*

Plaintiff asserts that her mental retardation is medically equivalent to Listing 12.05 (c) and (d). A claimant may satisfy his burden of proving disability if he shows that his impairments meet or equal a listed impairment. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d). More specifically:

> *To "meet" a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. To "equal" a Listing, the medical findings must be "at least equal in severity and duration to the listed findings."*

*Wilson*, 284 F.3d at 1224 (citations omitted); see 20 C.F.R. §§ 404.1525, 404, 1526, 416.925, 416.926; *Wilkinson o/b/o Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987); *Bell v. Bowen*, 796 F.2d 1350, 1353 (11th Cir. 1986).

Listing 12.05 provides in pertinent part:

> **Mental retardation**: *Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied. . . .*
>
> *C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.*
>
> *or*
>
> *D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:*

> *1. Marked restriction of activities of daily living; or*
> *2. Marked difficulties in maintaining social functioning; or*
> *3. Marked difficulties in maintaining concentration, persistence, or pace; or*
> *4. Repeated episodes of decompensation, each of extended duration.*

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05. The introductory material to the mental disorders listings clarifies Listing 12.05, stating:

> *The structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, [the Commissioner] will find that your impairment meets the listing.*

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00A (emphasis added).

"To be considered for disability benefits under section 12.05, a claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22." *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). Generally, a claimant meets the criteria for presumptive disability under 12.05(c) when he presents a valid IQ score of 60 through 70 inclusive and when claimant presents evidence of an additional mental or physical impairment significantly affecting claimant's ability to work. *Id*. at 1219-20 (citing *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992). The Eleventh Circuit, however, has recognized that a valid IQ score need not be conclusive of mental retardation where the IQ score is inconsistent with other evidence in the record on the claimant's daily activities and behavior. *Lowery*, 979 F.2d at 837 (citing *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986)).

In evaluating the evidence, the ALJ specifically noted that Dr. Muller, the second consultative psychologist, stated, "Although her IQ falls in the Mild Range of Mental Retardation, this writer would not assume that she is functionally retarded. She has been able to raise four children on her own and has held competitive employment long enough without special accommodations to her alleged learning problems." (Tr. 374, 641).

The ALJ noted that when Plaintiff underwent the consultative psychological evaluation performed by Jerry Dalton, Ed.D., on August 8, 2002, she reported that she had an 8th grade education with no special education and that she left school due to pregnancy (Tr. 166, 370). The ALJ observed that cognition and sensorium appeared appropriate given her level of mental functioning, and the examiner reported that Plaintiff could concentrate and follow simple instructions and directions (Tr. 167-68, 370). The ALJ noted that Plaintiff's basic memory was good, and she was oriented to time, place, person, and situation (Tr. 169, 370). The ALJ was aware that Plaintiff's WAIS-III testing produced a Verbal IQ score of 65; Performance IQ score of 69; and, Full Scale IQ score of 64 (Tr. 169-70, 370). The ALJ specifically observed that although the examiner reported the scores suggested mild mental retardation, he also reported that the Full Scale score of 64 may be a slight under representation of Plaintiff's intellectual potential (Tr. 170, 370). Dr. Dalton also noted that Plaintiff's Bender test was poorly drawn and planned and the level of sincerity demonstrated relevant to the replication of the Gestalts was questionable (Tr. 170).

The ALJ also noted that John Muller, Ph.D., performed a consultative psychological evaluation of Plaintiff on April 5, 2007 (Tr. 374, 636-41). The ALJ observed that Plaintiff said that she had dropped out of school in regular classes because she was "crazy," but that she was subsequently able to obtain a GED (Tr. 374, 638). The ALJ observed that WAIS-II testing produced a Verbal IQ score of 68; Performance IQ score of 67; and Full Scale IQ score of 65 (Tr. 374, 639).

8

The ALJ noted that Dr. Muller reported that Plaintiff was not highly motivated during the testing although the obtained results were not significantly discrepant from prior test results or her academic achievement (Tr. 374, 639). The ALJ noted that Dr. Muller diagnosed a Dysthymic Disorder and Mild Mental Retardation (Tr. 374, 640). However, as discussed above, Dr. Muller also stated, "Although her IQ falls in the Mild Range of Mental Retardation, this writer would not assume that she is functionally retarded. She has been able to raise four children on her own and has held competitive employment long enough without special accommodations to her alleged learning problems." (Tr. 374, 641).

The ALJ observed that Dr. Muller provided a "Medical Assessment of Ability To Do Work-Related Activities (Mental)" in which he reported Plaintiff Owens' abilities to make occupational adjustments were generally limited but satisfactory other than a seriously limited but not precluded ability to deal with work stresses (Tr. 374, 642). The ALJ noted that with respect to making performance adjustments, Dr. Muller reported that Plaintiff was unable to perform complex job instructions, with seriously limited but not precluded in her ability to follow detailed but not complex instructions, while her abilities to perform or follow simple job instructions were limited but satisfactory (Tr. 374, 643).

The ALJ found that while there was evidence of IQ scores in the range of Mild Mental Retardation, Plaintiff was not "functionally" mentally retarded (Tr. 375). The ALJ noted that with respect to the evidence of mental functioning, the school records were consistent with Plaintiff's reports that she quit school while attending regular classes, not special education classes (Tr. 166, 375, 501-06, 638). The ALJ noted that Plaintiff's grades were not stellar (she got Bs, Cs, Ds and Fs), but he also noted that Plaintiff was apparently always promoted on time (Tr. 375, 501-06).

9

Additionally, the ALJ observed that Plaintiff's own reports of her academic history were not inconsistent with the overall record which demonstrated that Plaintiff was not functionally mentally retarded (Tr. 166, 375, 501-06, 638). The ALJ found that regardless of whether Plaintiff left school due to pregnancy or some other reason, there was no evidence of deficits in adaptive functioning initially manifested during the developmental period before age 22 (Tr. 375). See *Hodges v. Barnhart*, 276 F.3d 1265, 1269 (11th Cir. 2001) ("At such hearing, the Commissioner may present evidence of Hodges' daily life to rebut this presumption of mental impairment. Our holding adopting a presumption of mental impairment before age 22 does not, however, shift the burden of proof from a claimant to prove entitlement to social security benefits."). Therefore, the ALJ found that the threshold requirement of listing 12.05 for Mental Retardation was not satisfied (Tr. 375).

The ALJ also relied on the unpublished Eleventh Circuit case of *John Garrett v. Astrue*, No. 06-16058 (11th Cir. July 3, 2007) (attached at Tab # 13) (Tr. 375-376). In that case the Court concluded that the ALJ had recognized that Garrett had low IQ scores, but nevertheless found that Garrett's impairments did not meet any condition in the listing category for mental retardation. *Garrett* at 2. In that case, the Court found that the record supported the ALJ's determination that despite Garrett's low IQ score, the required limitations in adaptive functioning were not present. *Garrett* at 2-3. The Court specifically noted that the record showed that Garrett could cook simple meals, perform chores such as dishwashing and yard work, and build model cars. The Court also noted that Garrett's daily activities included church attendance, television viewing, card playing, and walking in the mall. *Garrett* at 4. In applying the *Garrett* case, the ALJ found that the validity of the IQ testing in the present case was subject to some level of concern, as evidenced by the comments of each of the testing sources (Tr. 170, 375, 641). The ALJ noted that Dr. Muller very clearly expressed his doubts that Plaintiff was functioning at the low level indicated by her IQ scores, citing her family activities and work histories in support of his doubts (Tr. 375-76, 641). Additionally, the ALJ stated that having observed Plaintiff in the hearing, he concurred with Dr. Muller's concerns in reaching the conclusion that Plaintiff was not "functionally" mentally retarded (Tr. 376).

Furthermore, the ALJ found that in light of the concerns about Plaintiff's lack of effort reported by Dr. Muller, he found that the reported scores were invalid (Tr. 376, 639). In reaching his conclusion regarding Plaintiff's functional abilities in the evaluation of listing 12.05, the ALJ noted that she had a history of work as a driver and as a care giver for children and older people which was inconsistent with retardation and the level of limitation alleged (Tr. 376, 690). Additionally, the ALJ noted that Plaintiff did obtain a GED (Tr. 376).

Moreover, the VE testified at the hearing that three of Plaintiff's past jobs were classified at semi-skilled jobs (Tr. 690). Semi-skilled work is defined as

> *work which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage, or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work*

20 C.F.R. §§ 404.1568(b), 416.968(b).

With regard to the reference in the record to "life long" mental retardation, the ALJ noted that apart form the failure to satisfy the threshold requirement for the listing, even if it were assumed that Plaintiff's reported IQ scores were valid, the presumption of "life long" mental retardation was rebutted by Plaintiff's history of adaptive functioning, including semi-skilled work, that was entirely inconsistent with someone alleged to be mentally retarded (Tr. 636, 690). See *Hodges,* 276 F.3d at 1269 (Commissioner may present evidence from daily life to rebut presumption of mental impairment).

*Treating Physicians*

Plaintiff asserts that the ALJ improperly discounted the opinion of Dr. Hutchings. The ALJ noted that William Hutchings, M.D., performed a consultative medical examination of Plaintiff on March 26, 2007 (Tr. 373, 631). The ALJ observed that Plaintiff weighed 280 pounds with blood pressure readings of 122/80, and that she reported that she continued to smoke at least 10 cigarettes a day (Tr. 373, 631). The ALJ specifically noted that Dr. Hutchings performed no clinical, radiological, or other laboratory studies (Tr. 373, 631-32). The ALJ noted, however, that Dr. Hutchings reported that his physical examination showed the heart was of regular rate and rhythm without murmur, rub, or gallop and no wheezing, rhonchi, or rales in the lungs (Tr. 373, 632). The ALJ observed that there was no clubbing or cyanosis and only trace edema on the feet and her pulses were intact in all four extremities (Tr. 373, 632). The ALJ further noted that Plaintiff's range of motion studies showed limitation in the hips and knees with both knees crepitant on flexion and extension with negative McMurray and Drawer tests (Tr. 373, 632). The ALJ observed that restriction in shoulder abduction was also reported (Tr. 373, 632). and observed that poor effort was noted on grip strength testing (Tr. 373, 632). However, Dr. Hutchings found that Plaintiff's grip strength was 4 out of 5 (Tr. 632). The ALJ observed that Plaintiff could not stand well on her heels or toes and that she had positive Phalen's in both wrists and positive Tinel's in the left wrist (Tr. 373, 632). The ALJ noted however that cerebellar and cranial nerves were intact while straight leg raising tests were negative to 90 degrees in the sitting and supine position with negative bilateral Bow String Signs (Tr. 373, 632).

12

The ALJ found that mentally, Plaintiff had a depressed affect and mood but was fully oriented in all spheres with fair thought content and no evidence of suicidal ideation (Tr. 373, 632). The ALJ observed that Dr. Hutchings noted the reported history of active Carpal Tunnel Disease in both wrists, with the history of hypertension and hypercholesterolemia, all complicated by Class B Congestive Heart Failure with exhaustion on ordinary exertion (Tr. 373, 632). The ALJ noted that the history of Grave's disease with thyroid supplementation was also reported (Tr. 373, 632). The ALJ also noted that Dr. Hutchings also found a history of depression that was not controlled at the time (Tr. 373, 632). The ALJ observed that Dr. Hutchings reported that Plaintiff had bilateral extremity Osteoarthritis affecting the joints in the arms and legs (Tr. 373, 632).

Plaintiff asserts that the ALJ improperly rejected Dr. Hutchings' opinion based on a finding that Dr. Hutchings' erroneously based his limitations on Congestive Heart Failure, rather than carpel tunnel syndrome and orthopedic problems. Pl.'s Br. at 10-11. In reviewing Dr. Hutchings' opinion, the ALJ specifically noted that the opinion reported by Dr. Hutchings was devoid of objective clinical, laboratory, cardiological, or radiological studies to support his finding that she has Class B Congestive Heart Failure with exhaustion on ordinary exertion (Tr. 380, 632). The ALJ stated that it was evident that Dr. Hutchings's belief that Plaintiff had Congestive Heart Failure was an active consideration in the doctor's functional conclusions, as well (Tr. 380, 632, 633-34). Dr. Hutchings listed Congestive Heart Failure as one of the causes for the limitations he was assessing (Tr. 633-34). Dr. Hutchings also actually stated that Plaintiff's other conditions "are complicated by Class B congestive heart failure with exhaustion on ordinary exertion." (Tr. 632). The ALJ also specifically found regarding carpel tunnel syndrome, that Dr. Hutchings' findings that Plaintiff could never perform handling and fingering was inconsistent with his examination finding that Plaintiff had 4/5 grip strength even with poor effort (Tr. 380, 632).

The ALJ instead gave greater weight to the opinions of the other treating and consulting physicians' assessments of Plaintiff's abilities, as discussed at length above. The ALJ is the finder of fact. An opinion of RFC is an issue reserved to the Commissioner to be based on all of the medical findings and other evidence. See 20 C.F.R. § 404.1527(e). The ALJ properly considered the relevant evidence. As fact-finder, the ALJ was entitled to weigh this evidence as he did. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); 20 C.F.R. § 404.1545, § 404.1546. The undersigned finds that the ALJ adequately explained why Dr. Hutchings opinion was not entitled to great weight, and such conclusion was based upon substantial evidence in the record.

*Vocational Expert*

Plaintiff Owens asserts that the ALJ erred in failing to follow the testimony of the vocational expert concerning the impact of her physical and mental limitations on the jobs which she could perform. Specifically, she complains that the hypothetical question was deficient because it did not include a limitation of occasional or no fingering, and that the jobs identified by the VE required educational levels higher than Plaintiff demonstrated on psychological testing.

The ALJ utilized the testimony of the VE and the framework of the Medical-Vocational Guidelines to conclude that a significant number of jobs existed in the national economy that Plaintiff could perform given her RFC and other vocational factors (Tr. 21-22, 23 findings 13). Here, the ALJ asked the VE to assume:

> *that the hypothetical individual could sit for six hours in an eight-hour workday, stand and/or walk for six hours in an eight-hour workday, and would need a sit/stand option. Please further assume the hypothetical individual could lift and/or carry ten pounds frequently and 20 pounds occasionally. Please further assume that the hypothetical individual would be capable of frequent handling and fingering, should never climb ropes, ladders, or scaffolds, could occasionally climb ramps and stairs, occasionally balance, stoop, kneel, crouch, and crawl. Please assume that the hypothetical individual should avoid all exposure to hazards such as moving machinery and unprotected heights. Please assume that due to mental limitations, the hypothetical individual would be capable of simple, unskilled work with occasional contact with the general public, and a stable work setting.*

(Tr. 691-92).

In response to the ALJ's hypothetical question, the VE identified jobs Plaintiff could perform and stated:

> *Some examples would be assembler II, that's a bench assembly job, the DOT is 723.684-018, and that's light with an SVP of 2, unskilled, approximately 25,000 nationally, 350 Georgia. Another example would be a electrical assembler, DOT is 729.684-054, it's light, SVP 2, unskilled, 150,000 nationally, and 1,000 in Georgia. Another example would be a marker II, DOT is 920.687-126, that's light, SVP 2, 16,000 nationally, 400 Georgia.*

(Tr. 692).

The ALJ was not required to rely on the VE's response to a hypothetical question that included Plaintiff's unsupported allegations posed by her counsel. *See Graham v. Bowen*, 790 F.2d 1572, 1576 (11th Cir. 1986); *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993); *Copeland v. Brown*, 861 F.2d 536, 540-41 (9th Cir. 1988); *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985). The ALJ determined that Plaintiff was capable of frequent fingering. (Tr. 377) and relied upon the opinions of Dr. Gupta and Dr. Whiteman, as discussed above, in support of that conclusion.

Regarding Plaintiff's mental ability to perform the jobs, all of the jobs identified by the VE were unskilled jobs. (Tr. 692). See SSR 00-4p, 2000 WL 1898704 (S.S.A.) ("unskilled work corresponds to an SVP of 1-2"). "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568(a), 416.968(a).

According to the VE, Plaintiff Owens had in the past performed the jobs of home attendant, SVP of 3, semi-skilled; daycare attendant, SVP of 4, semi-skilled; baker helper, SVP of 3, semiskilled; kitchen helper, SVP of 2, unskilled; and van driver, SVP of 3, semi-skilled (Tr. 689-90). Furthermore, the ALJ noted that Dr. Muller reported in his evaluation that Plaintiff was not highly motivated during the testing, although the obtained results were not significantly discrepant from prior test results or her academic achievement (Tr. 374). Dr. Muller specifically stated that he "would not assume that [Plaintiff] is functionally retarded. She has been able to raise four children on her own and has held competitive employment long enough without special accommodations to her alleged learning problems." (Tr. 374, 641).

15

The ALJ properly considered the relevant evidence. As fact-finder, the ALJ was entitled to weigh this evidence as he did. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); 20 C.F.R. § 404.1545, § 404.1546.   In reviewing the ALJ's decision for support by substantial evidence, this court may not re-weigh the evidence or substitute its judgment for that of the Commissioner.  "Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239.

For the foregoing reasons, the decision of the Commissioner is **AFFIRMED** pursuant to Sentence Four of § 405 (g).

SO ORDERED AND DIRECTED, this 31st day of MARCH, 2010.



                                                CLAUDE W. HICKS, JR.
                                                UNITED STATES MAGISTRATE JUDGE

msd